IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:12-CR-00032-F-1
No. 4:15-CV-00035-F

| | |
|---|---|
| CHARLES RICHARD MOORE, JR., ) | |
| Petitioner, ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| Respondent. ) | |

This matter is before the court on the Government's Motion to Dismiss [DE-131] Charles Richard Moore, Jr.'s Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [DE-122]. The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons more fully stated below, Moore is not entitled to relief on his § 2255 motion, Moore's § 2255 motion is DENIED, and the Government's Motion to Dismiss is DENIED.

**I. Factual and Procedural Background**

On March 14, 2012, Moore and codefendant Lenard Cornelius Smith were charged in a two-count indictment. *See* Indictment [DE-1]. In Count One, Moore was charged with a Hobbs Act Robbery and aiding and abetting, in violation of 18 U.S.C. §§ 1951 and 2. *See id.* Count Two charged Moore with the use of a firearm during a crime of violence and aiding and abetting, in violation of 18 U.S.C. §§ 924(c) and 2. *See id.* At Moore's arraignment, held on June 4, 2012, he pled guilty to Counts One and Two, pursuant to a written plea agreement [DE-42].

On February 21, 2013, the court held Moore's sentencing hearing and sentenced him to 87 months' imprisonment on Count One and 84 months' imprisonment on Count Two. *See* Judgment [DE-70]. The terms were be served consecutively, for a total term of 171 months' imprisonment. *See id.*

On February 28, 2013, Moore filed a Notice of Appeal [DE-67]. In an order [DE-96] entered on October 11, 2013, the Fourth Circuit Court of Appeals vacated Moore's sentence and remanded the case for resentencing on Count Two in conformity with *Alleyne v. United States*, 133 S. Ct. 2151 (2013).

At resentencing, held on February 19, 2014, Moore was sentenced to 87 months' imprisonment on Count One and 60 months' imprisonment on Count Two. *See* Amended Judgment [DE-111]. The terms were to be served consecutively, for a total term of 147 months' imprisonment. *See id.*

On March 3, 2015, Moore filed the instant Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [DE-122]. In the sole claim in his § 2255 motion, Moore alleges that his attorney provided ineffective assistance of counsel by telling him that he could not plead guilty to the Hobbs Act Robbery, Count One, while taking the firearm offense, Count Two, to trial. *Id.* at 4. According to Moore, if his attorney had properly advised him of his right to trial, he would have likely been acquitted of Count Two. *Id.* On May 19, 2015, the Government filed a Motion to Dismiss [DE-131], arguing that Moore failed to state a claim upon which relief can be granted.

## II. Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved which is consistent with the

2

complaint's allegations. *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'shp*, 213 F.3d 175, 180 (4th Cir. 2000). However, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts.*, 213 F.3d at 180.

### III. Discussion

### A. Moore is not entitled to relief on his § 2255 motion.

Moore alleges that his attorney provided ineffective assistance by telling him that he could not plead guilty to the Hobbs Act Robbery, Count One, while taking the firearm offense, Count Two, to trial. *Id.* at 4. The court concludes that Moore has stated a claim for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). For this reason, the Government's Motion to Dismiss must be DENIED. Nevertheless, for the reasons set forth below, the court concludes that Moore is not entitled to relief on his § 2255 motion.

#### 1. Applicable Law

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his

3

defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The petitioner bears the burden of proof as to both prongs of the *Strickland* standard. *United States v. Luck*, 611 F.3d 183, 186 (4th Cir. 2010). Under the first prong, the petitioner must show that his counsel's representation "fell below an objective standard of reasonableness" as measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. As for the second prong, the petitioner must demonstrate that his counsel's inadequate performance was prejudicial to him. *Id.* at 687. Specifically, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id.*

### 2. Evidentiary Hearing

On March 3, 2016, the court held an evidentiary hearing on the sole claim raised in Moore's § 2255 motion. Moore was present and represented by retained counsel Eugene E. Lester, III. Assistant United States Attorney Seth M. Wood represented the Government. The court heard testimony from Moore and his trial counsel, A. Patrick Roberts.

#### a. Charles Richard Moore Jr.'s Testimony

At the March 3, 2016 evidentiary hearing, Moore testified as follows: I was indicted in a federal criminal offense in March of 2012. There were two counts to the indictment: Count One charged me with a Hobbs Act Robbery and Count Two charged me with carrying or using a firearm during the commission of a crime.

Prior to my indictment, I had never received any formal legal training, and I went to

4

school only up to the twelfth grade. I sought the assistance of an attorney to help me with my case. Gloria Adams served as my attorney initially, but later Patrick Roberts served in that capacity.

Roberts presented me with a plea agreement, which I signed. Prior to signing the plea agreement, I asked Roberts to have Count Two dismissed. Also before signing the plea agreement, I disclosed to Roberts the nature of my involvement in the offenses charged. Specifically, I was guilty of Count One, but I was not guilty of Count Two.

I knew that when I signed the plea agreement I was pleading guilty to Counts One and Two. I did not want to take Count One to trial because I could lose the benefit of acceptance of responsibility at sentencing and get more time.

Roberts did not review the plea agreement with me line by line. Rather, Roberts gave me a copy, told me to go back to my cell and read it, and ask if I had any questions. I was advised of only two options prior to signing the plea agreement: I could plead guilty to both charges or, I could go to trial on both charges. Based on this understanding of my case, I chose to plead guilty to both counts. I accepted the plea agreement because, according to Roberts, I had to plead guilty to both counts, and I was guilty of Count One.

I did not want to go to trial on Count One, but I did want to go to trial on Count Two. Roberts never told me I could plead guilty to Count One and go to trial on Count Two. I wanted to get acceptance of responsibility and was concerned about losing it if I went to trial on both counts. It was my understanding that if I pled guilty "straight up" to Count One and went to trial on Count Two, I would still have gotten acceptance of responsibility. Roberts failed to discuss the risks of taking my case to trial.

5

During my Rule 11 hearing, the Government read the terms of my plea agreement into the record. The court asked if I understood the charges, and I responded that I did. I advised the court that I had read the plea agreement and discussed it with my attorney. The court advised me that whether to accept the plea agreement was for me to decide. When I was asked if I had questions, I stated that I did not.

I recall my June 4, 2012 Rule 11 hearing, and I remember stating that I did not agree with the charges. Specifically, I did not agree with Count Two, the firearm offense. I talked to Roberts during the Rule 11 hearing, but my understanding of the case did not change. While under oath at my Rule 11 hearing, I admitted I was guilty of Count Two. I did not want to plead guilty to Count Two, but Roberts told me it was an all or nothing situation.

After I was sentenced, my understanding of my case changed. I studied criminal law reports and talked to some "jailhouse lawyers." I came to understand that I could have pled guilty to Count One "straight up" and taken Count Two to trial.

I made an affidavit in connection with my § 2255 motion. I prepared the affidavit on February 25, 2015, which was after I was sentenced. My affidavit provides that Roberts failed to properly advise me that I could have pled guilty to Count One and taken Count Two to trial. My affidavit states that if I had known I could sever my two charges, the outcome of my conviction would have been different. My affidavit doesn't say anything about being able to plead guilty "straight up" to Count One.

A Presentence Report was prepared prior to my sentencing. Roberts went over my Presentence Report with me, and I told Roberts about any inaccuracies. Roberts only raised one objection at sentencing, and it related to an enhancement for my role in the offense.

6

At sentencing, I was asked if he had any objections not raised by Roberts. I did not raise additional issues. I had not seen the Presentence Report in its final form prior to sentencing, but I had seen a draft.

I had concerns with paragraph six of the Presentence Report and raised those concerns with Roberts. Specifically, I pointed out that they had a taser but not a firearm. Roberts told me that the issue didn't matter. I argued that I did not know that a firearm would be used in the robbery. A firearm was part of my uniform, but I still maintain that there were not supposed to be any guns used during the robbery. I was armed, and my coworker who was not involved in the robbery was also armed. I also provided my firearm to a codefendant. My codefendant brought a taser to the robbery.

### b. A. Patrick Roberts's Testimony

At the March 3, 2016 evidentiary hearing, A. Patrick Roberts testified as follows: I am a criminal defense attorney and have been working in that field for fourteen years. I have had my own law firm for almost ten years. I am licensed to practice law in North Carolina. I am licensed to practice law in federal court in the Western, Middle, and Eastern Districts of North Carolina. I am also licensed to practice law in the Fourth Circuit Court of Appeals and the United States Supreme Court. I handle criminal defense matters in state and federal court, specializing in drug and sex crimes. I have represented between twenty-five and fifty criminal defendants in federal court and have tried six cases in federal court. I handle between one hundred and two hundred criminal cases per year, and I have handled around four hundred to eight hundred cases since handling Moore's case.

I am consulting a notebook during my testimony. The notebook consists of materials

from Moore's sentencing hearing, Presentence Report documents that were reviewed with Moore, notes that my associate and I prepared following meetings with Moore, handwritten notes written by Moore, a number of documents prepared in anticipation of a debrief of Moore after the Rule 11 hearing, and internal notes from my office.

I represented Moore as retained counsel between 2011 and 2012. I was retained in late March or early April, and our first meeting was held on April 9, 2012, at New Hanover County Jail. I had an associate during this time named Ryan Stump. Stump was based in the Wilmington office, and I was based in the Raleigh office. I would come to Wilmington to have meetings with Moore. If I was not physically present in a meeting, Stump would have been and would have reported back about any discussion with Moore.

I have no contemporaneous notes describing what I told Moore about the plea agreement or severance of the charges. Moore was charged in two counts, a robbery count and a gun charge. Count Two carried a mandatory punishment if Moore was convicted. It was "possible" that if Moore had pled guilty "straight up" on Count One and taken Count Two to trial and been acquitted he still could have gotten acceptance of responsibility. I never told Moore that he would or would not get acceptance of responsibility, only advised him what I believed his chances were. U.S. Attorney Bennett made it clear that he was not interested in a debrief if Moore's case went to trial. Moore and I discussed the possibility of him pleading guilty to one count and not guilty to the other count. It was my topic to bring up, and it came up fairly early in our conversations.

Moore's issue was not with the conduct but with the sentence he would ultimately serve when the matter was over. Moore and I discussed what could be done to minimize the sentence.

8

The discussion was go to trial or cooperate with the Government. Moore wanted to cooperate with the Government, but he didn't want to face Count Two as a potential consequence. The question became whether Moore could plead guilty to Count One, plead not guilty to Count Two, still receive acceptance of responsibility for Count One, and provide information that might qualify him for a 5K or § 3553(e) motion.

Moore wanted me to negotiate with Bennett for what he believed was his valuable information. I raised this with Bennett, and Bennett said he would be willing to have Moore debriefed only after he had entered a guilty plea. Moore wanted me to negotiate the dismissal of Count Two in exchange for his guilty plea to Count One.

I discussed with Moore whether going to trial on Count Two would be wise. We talked about the issue of whether his Rule 11 hearing statement would be admissible. Because all of the evidence required to prove Count One would also be necessary to prove Count Two, Moore likely would not get acceptance of responsibility for pleading guilty only to Count One.

Moore ultimately pled guilty to both counts, pursuant to a plea agreement. I reviewed the plea agreement with Moore consistent with my habit and practice. Specifically, I give the client a copy of the plea agreement and go through it line by line or paragraph by paragraph, which ever the case may be. This process allows the client to raise questions, which I address before moving on. I actually recall going through this process in Moore's case. I remember both Moore and his case for a number of reasons.

I recall Moore saying he didn't agree with the charges during his Rule 11 hearing. Moore's concern was with the time stated in the plea agreement, not that he actually disagreed with the charges. Moore was concerned about Count Two and his ability to provide information.

9

Moore did not want to take the mandatory time associated with Count Two. Moore admitted to facts that clearly supported both counts.

Moore pled guilty and was debriefed, but he did not get the benefit of substantial assistance. A motion was not filed because the agents and Bennett indicated they did not believe Moore was being truthful.

When Moore pled guilty at his Rule 11 hearing, there were no other outstanding plea agreements from the Government. Bennett expressed interest in Moore's cooperation because he believed Moore knew where the remaining money was. Bennett wanted to debrief Moore, but he would not agree to a debrief until a guilty plea had been entered pursuant to the plea agreement he had offered.

Moore told me initially that he did not know a gun would be used in the robbery, but on May 15, he gave me a letter to contrary. After reviewing discovery in this case, I thought the Government's case was "fairly strong." The weapon used, as it relates to Count Two, was a company-issued firearm, which would have been recognized by the other driver as company-issued and belonging to Moore or another employee.

Prior to Moore's sentencing, I reviewed the Presentence Report and discussed it with him. Based on my discussion with Moore, I submitted objections to the Presentence Report to the United States Probation Office. Stump and I took notes on all of Moore's objections to the draft Presentence Report. Moore had no objections to paragraph six of the Presentence Report, and he had a chance to see paragraph six in its final form prior to sentencing. There is nothing in paragraph six of the Presentence Report suggesting that Moore knew his codefendant, Lenard Smith, would use a firearm or threaten Drexel Lewis, his coworker, with a firearm.

10

### 3. Discussion

Moore's allegations, as contained in his § 2255 motion and his evidentiary hearing testimony, were contradicted by Roberts's evidentiary hearing testimony. Thus, whether Roberts provided deficient performance under the first prong of the *Strickland* standard requires a credibility determination.

When assessing the credibility of witnesses, the court can consider "variations in demeanor and tone of voice." *Anderson v. Bessemer City, N.C.* 470 U.S. 564, 575 (1985). Courts can also consider documents and objective evidence that may contradict the witness's testimony or show inconsistencies, *id.*, as well as the witness's motive to lie and the specificity of the his statements, *Jackson v. United States*, No. 5:07-CR-110-FL-1, 5:12-CV-205-FL, 2014 WL 7149635, at *4 (E.D.N.C. Dec. 15, 2014) (citing *United States v. Wilson*, 624 F.3d 640, 665 (4th Cir. 2010)).

Roberts was candid about his lack of contemporaneous notes describing what he told Moore about the plea agreement or severance of the charges, but Roberts also testified that he remembers Moore and his case for a number of reasons. Roberts is a seasoned criminal defense attorney and explained that he and Moore discussed the possibility of Moore pleading guilty to one count and not guilty to the other count. In fact, Roberts recalled that it was his topic to bring up, and the discussion came up fairly early in their conversations. Moore, on the other hand, provided terse answers with no explanation. Moore provided sparse testimony and testified only to exactly what would appear to most favor success on his § 2255 motion.

In light of the foregoing, the court credits Roberts's version of events in this case and discounts Moore's version. The court declines to give any weight to Moore's allegation that

11

Roberts told him that he could not plead guilty to Count One while taking Count Two to trial. As addressed above, this allegation was directly refuted by Roberts's credible evidentiary hearing testimony. For these reasons, Moore's claim must fail under the first prong of the *Strickland* standard.

Under the second prong of the *Strickland* standard, Moore must show that but for counsel's ineffective assistance, he would not have pled guilty to Count Two and would have insisted on going to trial on that count. *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (holding that the *Strickland* test applies to challenges to a guilty plea based on ineffective assistance of counsel, and in order to show prejudice in this context, the defendant must show that there is a reasonable probability that but for counsel's errors he would not have pled guilty and would have instead insisted on going to trial). The court finds that it would not have been objectively reasonable to plead not guilty to Count Two based on the evidence available in this case. Roberts, who reviewed the discovery, described the evidence against Moore as being "fairly strong." Some of the evidence potentially available, as stated in the Presentence Report, is as follows:

> On June 23, 2011, at approximately 9:45 a.m., an armored vehicle owned by Garda Cash Logistics (Garda) arrived at Bank of America (BOA) automatic teller machine (ATM) at 1313 Carolina Avenue in Washington, North Carolina. Garda handles delivery of currency to BOA ATM machines. Garda employees, Charles MOORE, and Drexel Lewis, both of whom were armed, were in the vehicle. Upon arrival, Lewis exited the vehicle, walked to the ATM, opened it, and began printing receipts and pulling the money and deposits. MOORE, who remained [in] the vehicle, "popped" the door with a remote switch thereby allowing Lenard Smith to gain access into the vehicle. After Smith entered the vehicle, MOORE gave Smith, who was armed with a Taser, his firearm and cell phone. Smith stayed in the front passenger area of the vehicle and waiting for Lewis to return to the vehicle. Lewis entered the vehicle and shut the side door behind him. At that point, Smith forced Lewis to the floor of the vehicle and secured him with flex-cuffs. Smith then took

12

Lewis' weapon and cell phone. MOORE exited the vehicle and closed the ATM to avoid drawing any suspicion to the scene. MOORE returned to the vehicle and drove approximately one-half mile to a loading dock behind a strip mall. After arriving at the loading dock, Smith retrained [sic] MOORE by placing him in flex-cuffs. MOORE was then placed on the floor of the vehicle next to Lewis.

After securing MOORE and Lewis, Smith opened the side door of the armored vehicle and threw several bags and mail crates of money out of the vehicle to a second individual who was later identified as Emanuel Wallace. Smith exited the vehicle, closed the door, and both Smith and Wallace left the scene. Lewis and MOORE removed the flex-cuffs and MOORE drove the vehicle back to the BOA branch. Lewis entered the bank and had an employee call 911. The total loss was $1,208,360.

PSR ¶¶ 6, 7.

Citing *United States v. Greene*, No. 14-C-431, 08-CR-124, 2015 WL 347833 (E.D. Wis. Jan. 23, 2015)[1], Moore argues he is actually innocent of Count Two because he did not know a firearm would be available, and in light of the Supreme Court's decision in *Rosemond v. United States,* 134 S. Ct. 1240 (2014), which held that, to aid and abet a firearm offense in violation of 18 U.S.C. § 924(c), a defendant must have advance knowledge that the firearm will be used or carried. *Id.* at 1249. The court finds Moore's argument wholly without merit. In this case, the robbery was of an armored car operated by *two armed* guards. Moore testified that a firearm was part of their outfit. Also, Moore's armed coworker, Drexel Lewis, was not part of the robbery plan.

---

[1] In *Greene*, the court notes that *Rosemond* requires "advance knowledge that a confederate would use or carry a gun during the crime's commission." 2015 WL 347833, at *1 (quoting *Rosemond*, 134 S. Ct. at 1243). The movant in *Greene* was a bank teller who was involved in planning the robbery of the bank and, importantly, told her co-actors that the security guard was typically *unarmed. Id.* at 2. The court finds that the instant case is clearly distinguishable from *Greene*. In this case, Moore knew that he and coworker Drexel Lewis would be armed at the time of the robbery. As Moore himself testified, a gun was part of their outfit.

13

For these reasons, the court declines to find that there is a reasonable possibility that but for Roberts's errors, Moore would have pled not guilty on Count Two and insisted on going to trial on that count. Consequently, Moore's claim also fails under the second prong of the *Strickland* standard.

### IV. Conclusion

For the foregoing reasons, Moore is not entitled to relief on his § 2255 motion, Moore's § 2255 motion [DE-122] is DENIED, and the Government's Motion to Dismiss [DE-131] is DENIED.

A certificate of appealability will not issue unless there has been "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the court denies relief on the merits, a prisoner satisfies this standard by demonstrating that reasonable jurists would find that the district court's assessment of the constitutional claims is debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). However, when a court denies relief on procedural grounds, the prisoner must demonstrate both that the dispositive procedural ruling is debatable, and that the motion states a debatable claim of the denial of a constitutional right. *Slack*, 529 U.S. at 484-85.

The court concludes that Moore has not made the requisite showing to support a certificate of appealability. Therefore, a certificate of appealability is DENIED.

SO ORDERED.

This the 16 day of March, 2016.

James C. Fox
Senior United States District Judge

14